IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TOMMY WONG,<br><br>Plaintiff,<br><br>vs.<br><br>BRIGHAM YOUNG UNIVERSITY,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:09-CV-957 TS |

This matter is before the Court on Defendant Brigham Young University's ("BYU" or "Defendant") Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."[1]  In considering whether genuine

---

[1] Fed.R.Civ.P. 56(c).

issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

## II. STATEMENT OF FACTS

Plaintiff Tommy Wong began working for Defendant BYU in the Heating, Ventilation, and Air Conditioning ("HVAC") shop on January 4, 2004. Plaintiff worked as an HVAC mechanic as an at-will employee until he was terminated on September 16, 2008. Plaintiff is a Pacific Islander (native Hawaiian).

Plaintiff received a Performance & Development Plan ("PDP") Year End Evaluation in 2004.[4] That PDP noted that Plaintiff needed improvement in the following areas: "Punctuality-arrives to work on time and ready to work"; "Uses time wisely and productively"; "Communicates well with other university personnel"; and "Able to quickly and independently troubleshoot and solve problems."[5] The PDP also contained the following statement:

---

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[4] Docket No. 13, Ex. A. Plaintiff argues that the PDPs he received were "inaccurate, unfair, and discriminatory," *see* Docket No. 27, at 10, but does not dispute the contents of the PDPs.

[5] Docket No. 13, Ex. A.

> Tommy has a good attitude and wants to get the job done and do it right the first time. Tommy seems to be a team player and is willing to help whenever he is asked.
> Tommy needs to be mindful of his use of time and punctuality. We look forward to him being a stronger asset to the shop by being on time like his peers and looking for ways to increase his knowledge and productivity.
> Tommy is continuing to learn his complex HVAC systems and is becoming more independent in the tasks given to him.[6]

The 2004 overall performance rating was "Needs Improvement."[7]

Plaintiff received a PDP in 2005.[8] That PDP also noted that Plaintiff needed improvement in the following areas: "Punctuality-arrives to work on time and ready to work"; "Uses time wisely and productively"; "Communicates well with other university personnel"; and "Able to quickly and independently troubleshoot and solve problems."[9] The PDP summary stated:

> Tommy is a very intelligent and capable mechanic. His understanding of DDC controls has improved. I am concerned with Tommy's level of performance this past year and I want him to clearly understand what is expected as a team player for the university. Tommy needs to be on time and ready to work each day. He needs to use his time productively. Tommy needs to have a sense of ownership for his equipment and look for ways to improve the equipment. Tommy needs to work independently and not rely on others to complete his tasks. Tommy has great potential and I want to see him progress and grow with the university and will do anything I can to help him achieve this expectation.[10]

---

[6]*Id.*

[7]*Id.*

[8]Docket No. 13, Ex. B.

[9]*Id.*

[10]*Id.*

The 2005 overall performance rating was "Needs Improvement."[11]

Plaintiff's 2006 PDP noted that he "has several areas of performance that need major improvement."[12] The PDP went on to state:

> [Plaintiff's] expertise and craftsmanship fall short of his years of experience. Tommy requires more supervision and instruction than he should on each project or task assigned to him. Tommy has multiple projects that are extremely overdue or incomplete. . . . Tommy's use of productive time needs drastic improvement. Tommy is consistently late for work. He only arrives on time on average one to two times per week. This has been an ongoing problem of Tommy's[.] He has stated previously that he would make improvements, which he has for a very short period of time. If he is not consistently reminded to be on time, he falls back into his old habits of being late for work. Tommy has been found on multiple occasions sitting at the computer provided for HVAC controls, playing games instead of accomplishing long over due or pressing tasks. . . . Tommy needs to work toward first call resolution without situations being escalated out of frustration from the occupants due to prolonged repairs, lack of communication to the occupants or other members of the shop stepping in and taking responsibility to complete his tasks that he is responsible for. . . . Tommy needs to be more conscientious of BYU safety procedures while performing routine tasks such as lockout and tagging of equipment while doing maintenance for his own personal safety and his coworkers.[13]

On February 21, 2007, Plaintiff was given a memo from his supervisor which: (1) provided instruction on how to mount a control card; and (2) reprimanded Plaintiff for not complying with the directions of his supervisors.[14] In March 2007, Plaintiff was given a list of projects that needed to be completed (the "March List").[15]

---

[11]*Id.*

[12]Docket No. 13, Ex. C.

[13]*Id.*

[14]Docket No. 13, Ex. D.

[15]Docket No. 13, Ex. E.

4

Plaintiff received a PDP in 2007.[16] The PDP stated:

> This last year has seen improvements in Tommy's attitude and outward communication with his supervisors. When given a specific task, Tommy has carried those tasks out. Tommy has improved in the area of winterizing his building this last fall. On occasion this last year, during emergencies Tommy has been willing to stay late and work to relieve the problem.[17]

The 2007 PDP then went over the areas for which Plaintiff was given the charge to improve. The PDP noted "some improvement" in the area of "expertise and craftsmanship" but that Plaintiff was below what was expected.[18] There was minimal improvement in the area of "requires too much supervision on tasks or projects," and it was noted that Plaintiff was given a letter of reprimand for not following the repeated direction of a supervisor and that Plaintiff was given a list of projects and assignments "that are long outstanding and should have been fully completed."[19] The PDP noted "no improvement" in the area of not using time at work productively. It went on to state that Plaintiff "spends excessive time surfing the internet instead of working to complete tasks he is accountable for."[20] Plaintiff showed a small amount of improvement in his response to trouble calls and resolution but, it was noted, "there needs to be improved and sustained effort to take care of and communicate with building occupants and

---

[16]Docket No. 13, Ex. F.

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.*

clients and make repairs in a timely manner."[21] There was a small amount of improvement in the area of punctuality, though the PDP stated that Plaintiff, on average, "comes in the shop after 8:00 am."[22]

On February 26, 2008, Plaintiff was given a Letter of Understanding.[23] The purpose of the Letter of Understanding was to outline some of the major concerns of Plaintiff's performance of his duties over the past few years.[24] The Letter went on to discuss some of the performance issues that had been addressed in previous PDPs. The Letter concluded as follows:

> Tommy, you have many positive attributes, and we want you to succeed, but the ultimate decision is up to you. We expect you to progress in all areas reviewed in this letter and on your performance review. Your progress will be monitored for the next 60-day period. We do not desire a soft commitment from you only to have you return to past behavior. If you do return to your previous behavior and performance levels, you will place yourself in a situation to receive further disciplinary action, up to and including the termination of your employment. We want to see significant and immediate improvement that will be sustained in your overall performance.[25]

On September 11, 2008, Plaintiff was discovered in a room in a BYU building reading a book. Defendant contends that Plaintiff was found in a "confidential storage room" which contained nothing that would require his presence in the room. Defendant also contends that Plaintiff was found in the room on two separate occasions, with his feet up, reading a book.

---

[21]*Id.*

[22]*Id.*

[23]Docket No. 13, Ex. G.

[24]*Id.*

[25]*Id.*

Plaintiff, on the other hand, contends that he was reading a book while on his break, something he was permitted to do, and that the room that he was in was a room that, until recently, he had used to keep his equipment.

An employee of the Department of Visual Arts sent an email that eventually made its way to Plaintiff's supervisor. The email referenced the incident, stating that there was "a Polynesian man from Air Conditioning sitting in the chair with his shoes off, feet propped up, reading a book."[26]

After a few days and after discussions with various individuals, the decision was made to terminate Plaintiff's employment. Plaintiff was eventually terminated on September 16, 2008.

Plaintiff alleges that he filed his Charge of Discrimination with the Utah Anti-Discrimination & Labor Division and the EEOC on October 22, 2008, and the charges were received on December 11, 2008.[27] In his Charge of Discrimination, Plaintiff alleged that he was discriminated on the basis of his race. Plaintiff provided the following summary of his claim:

> I began working for this employer in January 2004 and have worked as a HVAC Mechanic. During my employment I was singled out and treated differently than other employees. I was given 60 days to complete a list of assignments or be terminated while other employees had unfinished projects, but were not treated the same. I finished my assignments on time but not one of the other 20 employees (all Caucasian) were given this same challenge. I was handed copies of emails describing me as "a Polynesian man from the air conditioning shop, with his feet propped up reading a book." It is true I was reading a book, but it was on my own break time. I was asked not to take my truck off campus even

---

[26] Docket No. 13, Ex. L.

[27] Docket No. 2, Ex. A. It is unclear where the date of October 22, 2008, originates, but it makes no difference in the determination of this matter whether the Charge was filed on that date or on December 11, 2008.

though it was a common practice by others. During 2008 I took time off work for family related emergencies (heart attack and passing of a close family member). I worked hard to keep my job secure. I was given the least favorable jobs to do and I was the only one given this kind of assignment. In September 2008 I was called into a meeting and terminated. I asked a member of management if I was being fired because I am a 'polynesian male' sitting down reading a book, and I was told "yes and more than that."[28]

The EEOC sent Plaintiff a Dismissal and Notice of Right to Sue on July 29, 2009. Plaintiff filed this action on October 26, 2009.

In his Complaint Plaintiff alleges the following discriminatory acts are the basis of his suit: (1) being given extra assignments; (2) harassment; (3) extra discipline not given to other employees; (4) not having the same privileges as other coworkers; and (5) being singled out and discharged from employment.[29] In his deposition, Plaintiff alleged that he was treated differently in the following respects: (1) that he was treated differently in relation to computer use; (2) that he was treated differently in relation to off-campus truck use; (3) that he was given less favorable jobs, such as the March List; (4) that he was talked down to by his supervisors; (5) that things were required of him that were not required of others; (6) that his supervisor made comments about his culture; (7) that a co-worker called him names such as "pineapple," "greasy," "cheese ball," and "tropical pigeon"; and (8) that he received unfair evaluations.

---

[28]*Id*.

[29]Docket No. 1, at 2-3.

III.  DISCUSSION

Plaintiff's Complaint can be read as asserting two types of claims: (1) a discrimination claim based on the Letter of Understanding and his ultimate termination; and (2) a hostile work environment claim.  Plaintiff brings claims under both Title VII and the Utah Antidiscrimination Act.  As the elements of a discrimination claim are similar under both Acts, the Court will apply the analysis used in Title VII cases.[30]  The Court will also address Plaintiff's wrongful discharge claim under Title VII.  Plaintiff's claims will be discussed below.

A.   STATUE OF LIMITATIONS

Defendant first argues that the majority of Plaintiff's claims are barred by the statute of limitations.

  1.   *Discrimination Claim*

As set forth above, Plaintiff's Complaint alleges a number of acts of discriminatory actions which are the basis of this suit, including: (1) being given extra assignments; (2) harassment; (3) extra discipline not given to other employees; (4) not having the same privileges as other coworkers; and (5) being singled out and discharged from employment.[31]  As an initial matter, the Court must determine which of these alleged discriminatory acts fall within Title VII's statute of limitations.

---

[30] *See Viktron/Lika v. Labor Comm'n*, 38 P.3d 993, 995 (Utah Ct. App. 2001).

[31] Docket No. 1, at 2-3.

Title VII requires a plaintiff to file a charge of discrimination within 300 days "'after the alleged unlawful employment practice occurred.'"[32] "A claim is time barred if it not filed within these time limits."[33] In his Complaint, Plaintiff alleges that he filed his Charge of Discrimination with the Utah Anti-Discrimination & Labor Division and the EEOC on October 22, 2008, and the charges were received on December 11, 2008. Using either of these dates, only two alleged unlawful employment practice occurred within the 300 day limitations period: the February 2008 Letter of Understanding and Plaintiff's termination.

2. *Hostile Work Environment Claim*

Hostile work environment claims "often involve a series of incidents that span a period of longer than 300 days."[34] The Supreme Court held that "as long as 'an act' contributing to a hostile work environment took place no more than 300 days before the plaintiff filed an EEOC charge, a court may consider the complete history of acts comprising that hostile work environment."[35] "Even so, however, an employee may not unreasonably delay the filing of a hostile work environment claim."[36] Because Plaintiff alleges an act contributing to a hostile

---

[32]*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104-05 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).

[33]*Id*. at 109.

[34]*Duncan v. Manager, Dept. of Safety, City and County of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005).

[35]*Id*. (citing *Morgan*, 536 U.S. at 117).

[36]*Id*.

10

work environment within the limitations period, the Court may consider the complete history of acts Plaintiff alleges comprise that hostile work environment.

B.  DISCRIMINATION CLAIM

Title VII prohibits an employer from discriminating against any individual because of "race, color, religion, sex, or national origin."[37] The burden-shifting scheme of *McDonnell Douglas Corp. v. Green*,[38] applies in this case.

> Under *McDonnell Douglas*, if the plaintiff can establish a prima facie case of discrimination . . . , the burden shifts to the defendant to show a legitimate non-discriminatory . . . reason for the adverse employment action. If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext.[39]

*1.  Letter of Understanding*

"To make out a prima facie case of discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees."[40] Plaintiff has met the first element, but has not met the second or third.

> Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

---

[37] 42 U.S.C. § 2000e-2(a)(1).

[38] 411 U.S. 792 (1973).

[39] *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006) (citation omitted).

[40] *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action.[41]

The Letter of Understanding did not affect Plaintiff's compensation or the terms, conditions, or privileges of his employment. To the contrary, it merely addressed Plaintiff's performance issues, encouraged improvement, and warned of possible consequences if performance was not improved. Such a letter does not constitute an adverse employment action.[42]

Further, the evidence shows no disparate treatment among similarly situated employees. As Defendant points out, it has shown that Caucasian employees received the same treatment that Plaintiff did when they violated the same policies as Plaintiff.[43] It is true that Plaintiff is the only employee that received a Letter of Understanding and was ultimately terminated, but Plaintiff was the only employee with all of the performance-related issues discussed above. Thus, there is no evidence that he was treated differently than similarly situated employees.

Even assuming that Plaintiff can establish a prima facie case of racial discrimination, Defendant has shown that Plaintiff was given the Letter of Understanding due to a legitimate business reason. Defendant has presented evidence that Plaintiff had a history of performance-related issues. The Letter of Understanding outlined some of the major concerns of Plaintiff's

---

[41]*Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006) (quotation omitted).

[42]*See id.* at 1224 (holding that a professional improvement plan, standing alone, is not an adverse employment action).

[43]*See* Docket No. 29, at 2 & n.3.

12

performance of his duties over the previous years and warned Plaintiff that if his performance did not improve he may face additional disciplinary action, including termination.

The burden then shifts to Plaintiff to show that the proffered reasons for the employment decision are pretextual. "'[S]ummary judgment is appropriate where a plaintiff cannot meet the burden of proving that an employer's articulated nondiscriminatory reason for an alleged retaliatory action is pretextual.'"[44]

> To show that an employer's proffered nondiscriminatory reason for an employment action is pretextual, a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.[45]

Here, Plaintiff has not met his burden. While Plaintiff argues that the actions taken against him were based on his race, he has presented no evidence to support his claims. Rather, the evidence clearly shows that Plaintiff had a long history of performance issues and that Defendant took the actions it did, including the Letter of Understanding and ultimate termination, in reaction to Plaintiff's continued performance deficiencies and not because of his race. Plaintiff has not produced evidence "of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [BYU's] proffered legitimate reasons for its action" to withstand summary judgment.[46]

---

[44] *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) (citation omitted) (alteration in original).

[45] *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 490 (10th Cir. 2006) (quotations omitted).

[46] *Id.*

2. *Termination*

To establish a prima facie case of termination on the basis of race, a plaintiff must demonstrate that: "(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination."[47] Plaintiff is a member of a protect class and there are genuine issues of material fact as to whether he was qualified and satisfactorily preforming his job. Thus, the Court will discuss only the third factor.

As discussed above in relation to the Letter of Understanding, Plaintiff has offered no evidence that his termination was due to his race. Rather, the evidence shows that Plaintiff was ultimately terminated due to his unresolved performance issues.

Even assuming that Plaintiff could establish a prima facie case of racial discrimination, Defendant has shown that Plaintiff was terminated due to a legitimate business reason. As has been stated, Defendant has presented evidence that Plaintiff was terminated based on his history of performance-related issues. As was stated by Plaintiff's supervisor, Plaintiff was terminated because of a "[l]ong history of not being able to perform his duties."[48]

Plaintiff argues that the proffered reasons for his termination are pretextual. For the same reasons set forth above in relation to the Letter of Understanding, Plaintiff has not met his burden here. Therefore, Defendant is entitled to summary judgment on Plaintiff's discrimination claim.

---

[47]*Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004) (citation omitted).

[48]Docket No. 27, Ex. G at 69:23-24.

14

C.  HOSTILE WORK ENVIRONMENT

"Although Title VII does not explicitly mention hostile work environment, a victim of a racially hostile work environment may nevertheless bring a cause of action under Title VII."[49]  A hostile work environment claim requires a plaintiff to show "that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus."[50]  Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[51]  "A plaintiff cannot meet this burden by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs."[52]

Neither element is met here.  First, there is no evidence to show that Plaintiff was subjected to severe and pervasive harassment.  As stated previously, Plaintiff has alleged that he was called names such as "pineapple," "greasy," "cheese ball," and "tropical pigeon."  While these slurs are clearly inappropriate and may have been hurtful to Plaintiff, they were used sporadically at best.  Second, there is no evidence that any harassment was racial or stemmed

---

[49]*Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1156 (10th Cir. 2008) (quotation omitted).

[50]*Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005).

[51]*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

[52]*Chavez*, 397 F.3d at 832 (quotations omitted).

15

from racial animus. Therefore, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

D.   *FARAGHER/ELLERTH DEFENSE*

As a result of the above, the Court need not discuss Defendant's argument that it is entitled to an affirmative defense under *Faragher/Ellerth*.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff and close this case forthwith.

The hearing set for October 18, 2010, is STRICKEN.

DATED   October 13, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge